UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KEVIN L. DUNCAN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | CAUSE NO. 3:17-cv-485-PPS-MGG |
|  | ) |  |
| NANCY A. BERRYHILL, | ) |  |
| Acting Commissioner of the Social Security | ) |  |
| Administration, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## **OPINION AND ORDER**

Kevin L. Duncan appeals the denial of his application for Social Security supplemental income. An administrative law judge found that Duncan was not disabled within the meaning of the Social Security Act. Duncan raises three arguments which he contends requires a reversal of the ALJ's decision. Because I agree with Duncan that the ALJ's written decision rejected the opinion of Duncan's case manager out of hand without explanation, I must reverse the ALJ's decision and order a remand so that his application may be further considered.

### **Background**

Duncan filed his application for benefits on February 19, 2014 when he was 45 years old.[1] [A.R. 12.] Duncan alleged disability based upon his diagnosed

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry #5. Citations in this opinion will be to the page number in the lower right hand corner of the A.R.

schizoaffective disorder; major depressive disorder; emphysema; brain atrophy; and epilepsy. [A.R. 19.] His application was denied. Duncan then requested a hearing before an ALJ which was held on February 23, 2016. [A.R. 33-60.]

In the written decision denying Duncan's application, the ALJ followed the familiar five-step process used to evaluate claims for disability. At step one, the ALJ determined that Duncan had not engaged in substantial gainful activity since February 19, 2014. [A.R. 14.] At step two, the ALJ found the following severe impairments: "epilepsy with brain atrophy; schizoaffective disorder; major depressive disorder; and alcohol dependence, in remission[.]" [*Id.*] At step three, however, the ALJ determined that these impairments, whether separate or taken together, did not satisfy any of the applicable Society Security listings. [A.R. 16-18.]

At step four, the ALJ assessed a residual functional capacity ("RFC") and found that Duncan could not perform any of his past relevant work. [A.R. 18, 22-23.] The RFC determination was that Duncan could perform light work, subject to several additional limitations. [A.R. 18.] At step five, the ALJ determined that considering Duncan's age, education, work experience, and RFC, sufficient jobs existed in the national economy that he could perform and consequently, he was not disabled. [A.R. 23.] The ALJ thus denied Duncan's application for benefits and the Appeals Council affirmed. [A.R. 12.]

## Discussion

My review of the ALJ's decision, including his factual findings, is generally deferential and it will be upheld unless it is not supported by substantial evidence. 42

2

U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). My review is guided by the fact that "[a]n ALJ need not address every piece of evidence but must build a 'logical bridge' between the evidence and his findings and adequately discuss the issues so that [I] can evaluate the validity of the agency's findings." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir.2010).

Duncan raises three distinct challenges to the ALJ's opinion. First, he challenges the ALJ's RFC determination and the attendant hypothetical posed to the vocational expert as insufficient in that it did not take into account the moderate limitations in concentration, persistence, or pace that the ALJ found Duncan had. Second, Duncan asserts that the ALJ's RFC determination was also deficient for failing to account for any meaningful limitation stemming from Duncan's epilepsy. Third, Duncan claims that the ALJ rejected the opinion of his counselor Ms. Christeen Shepard out-of-hand and without conducting a sufficient analysis as to whether her opinion was supported by sufficient record evidence. It is on this last argument that I will spend most of my time.

The parties agree that Ms. Shepard's opinion should be categorized as an "other medical source" as opposed to an "acceptable medical source" such as a treating physician. [DE 15 at 22; DE 19 at 8-9]. Under the governing regulations, the opinions of such other medical sources cannot "establish the existence of a medically determinable impairment." SSR 06-03P. Instead, they are to be considered "when evaluating 'key issues such as impairment severity and functional effects.'" *Phillips v. Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010) (citation omitted). "In deciding how much weight to give

3

to opinions from other medical sources, an ALJ should apply the same criteria listed in § 404.1527(d)(2)" *i.e.*, the same framework used to evaluate acceptable medical source opinions on issues of disability and impairment. *Id.*

"Specifically, the ALJ should consider how long the source has known the claimant and how often they have seen the claimant; how consistent the opinion is with other evidence; the degree to which the source presents evidence to support an opinion; how well the source explains the opinion; and, whether the source has a specialty related to the claimant's impairments." *Newton v. Colvin*, No. 3:12-CV-776 JD, 2014 WL 772659, at *8 (N.D. Ind. Feb. 25, 2014); SSR 06-03P (stating that "opinions from sources such as teachers, counselors, and social workers who are not medical sources" should be evaluated under the same criteria even if their opinions cannot in and of themselves establish an impairment).

The Seventh Circuit has ruled that an ALJ commits reversible error when he or she rejects an "other medical source" opinion for being contradicted by the objective medical record but fails to identify what specific evidence contradicts the opinion. *Phillips*, 413 F. App'x at 884 (the other medical source's "findings, said the ALJ, are inconsistent with the rest of the medical evidence and are unexplained and unsupported by documentation or treatment notes. But the ALJ never identified what evidence contradicts Elsamahi's findings[.]"). This is precisely our case, and therefore *Phillips* compels the result here.

In rejecting Ms. Shepard's opinion, here's what the ALJ had to say:

4

> The opinion of Cristeen Shepard is not given particular weight because she is a case manager and is not an 'acceptable medical source' as defined in 20 CFR 404.1513(a)(1) and 416.913(a)(1). Rather she is within the definition of 'other' medical source under this regulation, and her opinion is not entitled to the weight given to physicians, psychologists, or other acceptable medical sources. Furthermore, her opinion is not supported by the claimant's other treatment records.

[A.R. 22.] Thus, the ALJ rejected Ms. Shepard's opinion without any substantive analysis as to *why* it was being rejected. Instead, the ALJ's rejection of Ms. Shepard's opinion was based on nothing more than the fact that she was not an "acceptable medical source." That merely states the obvious. She's *not* an "acceptable medical source." But that is beside the point. What is left is the entirely conclusory statement that Ms. Shepard's "opinion is not supported by the claimant's other treatment records." [A.R. at 22.] It is impossible for me to give any meaningful review to this cursory analysis. While it is true that the ALJ is not required to discuss every piece of evidence, it is likewise true that he "must build a logical bridge from evidence to conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Such a "logical bridge" is entirely missing here where the ALJ does not engage in *any* analysis — much less the multi-factor analysis which must be utilized when weighing the opinions of medical sources. *Newton*, 2014 WL 772659, at *8.

While this error may in the end be inconsequential as there could be a sufficient basis to reject Ms. Shepard's opinion, as it stands now, the ALJ's brevity has prevented me from "conducting a meaningful review of the decision." *Newton*, 2014 WL 772659, at

5

*9; *Frame v. Astrue*, No. 1:11–cv–1062–WTL–MJD, 2012 WL 3637583, at *9 (S.D. Ind. Aug.21, 2012) ("[G]iven the importance and relevance of the information reflected in records authored by other medical sources, the ALJ must articulate a reasonable basis for rejecting other medical source opinions, which basis is grounded in substantive evidence in the record."). "[W]hile the ALJ was free to give [Shepard's] opinions less weight because she was not an "acceptable medical source," the ALJ was still required to evaluate [Shepard's] opinions. . . . Upon remand, the ALJ should articulate the weight given to [Shepard's] opinions, considering the factors set out in 20 C.F.R. § 404.1527(c)." *Wyatt v. Astrue*, No. 1:11-CV-00874-MJD, 2012 WL 2358149, at *6-7 (S.D. Ind. June 20, 2012).

Finally, although not necessary, it is worth making a passing assessment of Duncan's remaining arguments. Concerning the RFC determination, it does not appear that the ALJ did in fact incorporate all of his findings into the RFC. In particular, at one point in his opinion the ALJ found that Duncan's "mental impairments are indeed severe and cause limitations in the claimant's ability to fully function." [A.R. 22.] And earlier in the written decision, the ALJ found Duncan had moderate difficulties in concentration, persistence or pace and appeared to credit Duncan's testimony that he "can pay attention for [only] five minutes and that he is unable to complete tasks that he begins." [A.R. 17.] But there were no such limitations reflected in the RFC determination (or the hypothetical) which specifically dealt with Duncan's ability to maintain concentration throughout the workday. [A.R. 18 (accounting for mental impairments in

RFC by limiting work to "be such that it can be learned in 30 days or less or by short demonstration" but not otherwise limited based on concentration).]

Likewise, I agree with Duncan that simply because his epileptic seizures have occurred with less frequency following the implantation of a vagal nerve stimulator, Duncan does continue to experience seizures and such a limitation should be included within the RFC which reflects their reduced, but persistent, frequency. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("Our cases generally have required the ALJ to orient the VE to the totality of a claimant's limitations."). But the ALJ determined that because Duncan had received treatment (the aforementioned vagal nerve stimulator) which "has been generally successful in controlling those symptoms," Duncan's epileptic seizures and their limitations where not included in the RFC. [A.R. 20.] On remand, the ALJ should ensure that the RFC and attendant hypothetical addresses Duncan's moderate difficulties in concentration, persistence or pace, as well as Duncan's epilepsy or provide a sufficient basis as to why they are being excluded.

## Conclusion

The final decision of the Commissioner of Social Security denying plaintiff Kevin L. Duncan's application for Social Security Supplemental Income is **REVERSED.** The case is **REMANDED** to the ALJ for further consideration consistent with this opinion.

**SO ORDERED** on August 2, 2018.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT